**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

|  |  |
|---|---|
| SHAWN A. WOODWARD,<br><br>Plaintiff<br><br>v.<br><br>JOHN BROOKS REHABILITATION CENTER DR. JOHN DOE, *et al.*,<br><br>Defendants | Civil No. 25-12052 (RMB-SAK)<br><br>**MEMORANDUM OPINION** |

**IT APPEARING THAT:**

1. Plaintiff Shawn Woodward ("Plaintiff"), a detainee formerly confined at the Atlantic County Justice Facility ("ACJF") in Mays Landing, New Jersey filed a *pro se* civil-rights complaint under 42 U.S.C. § 1983, Dkt. No. 1 ("Complaint"), together with an application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a), Dkt. No. 1-2 ("IFP App.")

2. The matter is before the Court for *sua sponte* screening for dismissal under 28 U.S.C. § 1915(e)(2)(B) (applicable to plaintiffs proceeding IFP) and ¶ 1915A (applicable in civil actions when a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity). Courts must dismiss a complaint, or any portion of a complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a

1

defendant(s) who is immune from such relief. *Id.* In reviewing a complaint, courts must accept well-pleaded allegations as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and construe *pro se* complaints liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Courts apply the same standard under Federal Rule of Civil Procedure 12(b)(6) to *sua sponte* dismiss a complaint for failure to state a claim. *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citation modified).

3. As a pretrial detainee, Plaintiff's inadequate medical care claim arises under the Fourteenth Amendment. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 581–82 (3d Cir. 2003) (applying the Eighth Amendment deliberate indifference standard for convicted and sentenced prisoners to pretrial detainees whose inadequate medical care claims arise under the Fourteenth Amendment). To state a claim, Plaintiff must plead that he suffers a serious medical need, and defendants acted with deliberate indifference to that need. *See Thomas v. City of Harrisburg*, 88 F.4th 275, 281 and n. 23 (3d Cir. 2023) (noting "the Fourteenth Amendment affords pretrial detainees protections at least as great as those available to inmates under the Eighth Amendment[.]") Additionally, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." *Rode v. Dellarciprete*,

2

845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted).

4. Plaintiff alleges the following facts in his Complaint. Prior to his detention on December 27, 2024, in Atlantic County Justice Facility ("ACJF"), Plaintiff had been prescribed 32 mg buprenorphine/naloxone (hereafter "Suboxone") as part of a medication-assisted treatment ("MAT") for opioid use disorder. Compl. ¶ 7. ACJF has a contract with JBRC to administer Suboxone for the MAT program, and upon Plaintiff's intake at ACJF, staff decreased his Suboxone by half. Compl. ¶ 8. From January through March 2025, Plaintiff constantly complained about the reduction of his medication. *Id.* ¶ 9. When Plaintiff was interviewed by Doctor John Doe of JBRC about his prescription, Nurse Jane Doe of ACJF intervened and said Plaintiff should not be prescribed 32 mg of Suboxone because ACJF permits only 16 mg. *Id.* ¶ 10. Plaintiff described his withdrawal symptoms to Dr. John Doe, but Dr. John Doe agreed with Nurse Jane Doe (aka "Jen" or "Jenny") and determined Plaintiff would start on 16 mg. *Id.* ¶ 11.

5. Plaintiff requested that medical staff increase his Suboxone to 32 mg. *Id.* ¶ 13. On February 25, 2025, in response to a record request by Plaintiff, Captain Stowe at ACJF produced ACJF's MAT protocol, which generally limited distribution of Suboxone to 16 mg. *Id.* ¶ 13(D). Plaintiff received a reduced dosage for four months, although ACJF's policy permitted a prisoner to take a higher dose that was prescribed prior to entry into the facility. *Id.* ¶ 15. In early April 2025, staff

increased Plaintiff's Suboxone to 24 mg, which improved his symptoms. *Id.* ¶ 16.

6. Plaintiff is a Muslim, and he requested that during Ramadan he receive his Suboxone at 5 a.m., together with antibiotics that he received at that time, to avoid breaking his religious fast from sun-up to sun-down. *Id.* ¶¶ 18-22. On February 27, 2025, Nurse Jane Doe informed Plaintiff that his request was denied, and he would receive a misbehavior report for calling the Medical Hotline. *Id.* ¶ 24.

7. During the month of Ramadan, Nurse Becky Doe distributed Suboxone at approximately 1:00 p.m., and Plaintiff was forced to break his fast and drink water to take his medication. *Id.* ¶ 23.

8. Ramadan ended on March 30, 2025, and on March 31, 2025, the holiday of Eid-al-fitre, Captain Stowe refused to provide Plaintiff with the Muslim festival meal. *Id.* ¶¶ 26-29.

9. Plaintiff alleges Dr. John Doe and Nurse Jane Doe (aka Jen or Jenny) were deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments by reducing his Suboxone from 32 mg to 16 mg upon his entry into ACJF. *Id.* ¶ 30. Deliberate indifference to a serious medical need "requires both that an individual be aware of facts from which the inference could be drawn of a substantial risk [to the inmate's health] and that the individual actually draws that inference. *Thomas*, 88 F.4th at 281. Here, Plaintiff fails to allege facts that Dr. John Doe and Nurse Jane Doe actually drew the inference

that lowering Plaintiff's dose of Suboxone from 32 mg to 16 mg posed a substantial risk to his health. Even if these defendants were under the false impression that ACJF's protocol precluded the higher dose, Plaintiff has not alleged sufficient facts to establish they knew that lowering the dose from 32 mg to 16 mg, later increased in response to Plaintiff's complaint of withdrawal symptoms, posed a substantial risk to Plaintiff's health. This claim will be dismissed without prejudice.

10. Plaintiff also alleges Captain Stowe was deliberately indifferent to his serious medical needs in violation of the Eighth and Fourteenth Amendments. *Id.* ¶ 31. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). The claim against Captain Stowe will be dismissed without prejudice because he is a non-medical provider who simply responded to Plaintiff's grievance. If Plaintiff alleges Captain Stowe deprived Plaintiff of the medication he was prescribed by medical staff, Plaintiff may bring this claim against Captain Stowe in an amended complaint.

11. Plaintiff alleges Nurse Becky Doe and Captain Stowe violated his First Amendment right to free exercise of religion by denying his request to receive Suboxone at 5:00 a.m. so he could avoid breaking his fast by drinking water with

5

his medication at 1:00 p.m. *Id.* ¶ 32. Additionally, Plaintiff alleges Captain Stowe violated his First Amendment right to freely exercise his religion by refusing to provide Plaintiff a festive meal on March 31, 2025.

12. "Inmates clearly retain protections afforded by the First Amendment, ... including its directive that no law shall prohibit the free exercise of religion." *DeHart v. Horn*, 227 F.3d 47, 50 (3d Cir. 2000) (citation modified). There are two threshold requirements for a prisoner to state a First Amendment free exercise claim: (1) that the prisoner has a sincerely held belief; and (2) that belief is "religious in nature, in the claimant's scheme of things." *Id.* at 51 (citation modified). Plaintiff's allegations meet the threshold requirements.

13. Even when the threshold requirements are met, a prison inmate "retains [only] those rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Id.* at 51 (discussing *Turner v. Safely*, 482 U.S. 78, 89 (1987)). When a prison policy impinges on a prisoner's free exercise of his religion, courts must weigh four factors to determine whether the impinging policy was reasonable: 1) whether there is a valid, rational connection between the policy and the legitimate governmental interest used to justify the policy; (2) whether the inmate retains an alternative means of exercising the impinged right; (3) the costs imposed by accommodating the right asserted; and (4) whether there are alternatives to the impinging policy that would fully

6

accommodate the prisoner's right with little cost to valid penological interests. *Id.* (citation modified).

14. With respect to denial of his request to receive Suboxone at 5:00 a.m. during Ramadan, Plaintiff has not alleged that there was no valid, rational connection between denial of the request and a legitimate governmental interest or that he was denied an alternative accommodation with little cost to valid penological interests. Therefore, these claims against Nurse Jane Doe and Captain Stowe will be dismissed without prejudice.

15. Similarly, with respect to Captain Stowe's alleged denial of Plaintiff's request for a festive religious meal on March 31, 2025, Plaintiff has not alleged there was no valid, rational connection between the denial and a legitimate governmental interest or that he was denied an alternative accommodation with little cost to valid penological interests. Therefore, this claim will also be dismissed without prejudice.

16. For the reasons discussed above, the Court will grant Plaintiff's IFP application but dismiss the Complaint without prejudice. An appropriate Order follows.

Dated: March 25, 2026

s/Renée Marie Bumb
RENÉE MARIE BUMB
Chief United States District Judge